Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3367 | DATE | 12/17/2003 |
| CASE TITLE | | Softee vs. Mazner | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted. Status hearing set for 12/22/03 is stricken. Any other pending dates are stricken. Any other pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 1 8 2003 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TH✓ | courtroom deputy's initials | 03 DEC 17 AM 9:26 | date mailed notice |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SOFTEE MANUFACTURING, LLC, )
)
Plaintiff, )
)
v. ) No. 03 C 3367
)
STEVEN MAZNER and, )
WILLIAM H. CARNEY, individually; and )
THE VIRTEX GROUP, INC., a Texas )
corporation, )
)
Defendants. )

DOCKETED
DEC 18 2003

## MEMORANDUM OPINION AND ORDER

**AMY J. ST. EVE, District Judge:**

Plaintiff Softee Manufacturing, LLC, ("SM") sued Defendants Steven Mazner, William Carney, and The Virtex Group, Inc. ("Virtex"), alleging trademark infringement and several related claims in connection with use of the trademark SOFTEE. Defendants now move for dismissal for lack of personal jurisdiction and improper venue. For the reasons discussed below, Defendants' motion is granted.

### BACKGROUND

SM is a limited liability company located in Illinois. SM has two members, Tom and Larry Moore. Defendant Mazner resides in Florida; Carney resides in Texas; and Virtex is incorporated in Texas with its headquarters located in Corpus Christi, Texas. SM and its subsidiary, Softee Manufacturing Ltd., make and sell golf mats typically purchased by the operators of golf practice ranges. Such mats are generally comprised of an artificial hitting surface and a flexible tee. SM sells its mats under the SOFTEE name.

SM entered the golf mat business after purchasing the assets of Capital T, a United Kingdom

company, in October 2001. Capital T had been making and selling golf mats with the SOFTEE name since 1998. Prior to 2000, Defendant Mazner worked for Capital T's distributor in the United States. In 2000, Mazner began operating an Indiana corporation, Softee, Inc. ("SI"), on behalf of Capital T. Through SI, Mazner handled distribution of Capital T's products. After buying Capital T's assets, SM hired Mazner to distribute mats in the United States in connection with the name SOFTEE. Mazner worked as SM's president of North American Sales until October 31, 2002.

Defendants sell golf practice mats in connection with the SOFTEE name, and dispute Plaintiff's right to the name. Defendant Carney and his wife serve as the directors of Defendant Virtex, which had been a distributor of Plaintiff's golf mats. On November 22, 2002, Carney registered the domain names "softeemats.com," "softeegolf.com," and "softeegolfmat.com." On approximately December 13, 2002, Mazner and Carney filed an application to register SOFTEE for use with golf practice mats. In January 2003, Carney contacted SM and requested two mats purportedly for use at the Professional Golf Association 2003 merchandise show to be held in Florida in late January. Days after SM shipped the requested mats, Defendants sent SM a letter asserting rights to the SOFTEE trademark and demanding that SM stop using the mark. This suit followed.

At the merchandise show mentioned above, Mazner and Carney informed distributors of SM's mats that SM has no right to use the SOFTEE name. Additionally, an industry publication, *Golf Range Times*, featured Defendants' products — including the SOFTEE mark — in the spring of 2003. The *Golf Range Times* is distributed throughout the country, including the State of Illinois.

Virtex operates a website located at www.rangeking.com. At some time after Mazner was terminated by SM, this website displayed the SOFTEE name. This website is interactive to the

2

extent that users may send e-mail to the operators of the website.

## LEGAL STANDARDS

### I. 12(b)(2) Standards

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See* Fed.R.Civ.P. 12(b)(2). A plaintiff bears the burden of demonstrating the existence of personal jurisdiction over a defendant. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). A plaintiff need only make a prima facie showing that jurisdiction over a defendant is proper. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724-25 (7th Cir. 1994). In determining whether a plaintiff has met this burden, a court may consider affidavits from both parties. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). A court must also resolve all factual disputes in the plaintiff's favor and accept as true all uncontroverted allegations made by both plaintiffs and defendants. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988); *Turnock*, 816 F.2d at 333; *Allman v. McGann*, No. 02 C 7442, 2003 WL 1811531 at * 2 (N.D. Ill. Apr. 4, 2003).

A federal court's exercise of personal jurisdiction over a non-resident defendant is proper "only if a court of the state in which it sits would have such jurisdiction." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (quoting *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990)). Thus, this Court has jurisdiction "only if a[n Illinois State Court] would have such jurisdiction." *Id.* Any exercise of jurisdiction over a defendant must comport with state statutory law, state constitutional law, and federal constitutional law. *RAR, Inc.*, 107 F.3d at 1276. Because the Illinois long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed

3

under federal due process,[1] "the three inquiries ... collapse into two constitutional inquiries — one state and one federal." *Id.* But because the Seventh Circuit has found that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," one due process inquiry suffices. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR, Inc.,* 107 F.3d at 1276; *Klump,* 71 F.3d at 1371 n. 4). *See also Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir. 1997).

## II. Personal Jurisdiction Under Federal Constitutional Law

Personal jurisdiction pursuant to the Due Process Clause of the Fourteenth Amendment requires that a defendant have "minimum contacts" with the forum state such that the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945); *RAR, Inc.,* 107 F.3d at 1277; *Allman,* 2003 WL 1811531 at *3. The minimum contacts analysis varies depending on whether the case involves specific or general jurisdiction. Because this case involves specific jurisdiction, the Court will address that standard.[2]

Specific jurisdiction arises when the underlying suit relates to the defendant's contacts with the forum state. *RAR, Inc.,* 107 F.3d at 1277. In determining whether specific jurisdiction exists,

---

[1]The Illinois long-arm statute provides in relevant part: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c).

[2]A defendant is subject to general jurisdiction in Illinois only when it is either domiciled in Illinois, *see Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F.Supp.2d 824, 833 (N.D. Ill. 2000), or "where the defendant has 'continuous and systematic general business contacts with the forum.'" *RAR, Inc.,* 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984)) (internal quotations omitted). Plaintiff does not present an argument supporting general jurisdiction nor do the facts of this case suggest that general jurisdiction over Defendants is available.

courts must decide whether a defendant has "purposefully established minimum contacts within the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985), and "consider whether, by traditional standards, those contacts make personal jurisdiction reasonable and fair under the circumstances." *RAR, Inc.,* 107 F.3d at 1277. That the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Burger King Corp.,* 471 U.S. at 475 (quotations omitted), such that the defendant should "reasonably anticipate being haled into court there" is crucial to this determination. *World-Wide Volkswagen Corp. v. Woodsen,* 444 U.S. 286, 297 (1980).

## ANALYSIS

Defendants argue that the Court does not have personal jurisdiction over them because they have not conducted sufficient activities within the state such that they should anticipate being haled into court in Illinois. In response, Plaintiff argues that the location of its injury confers jurisdiction, and further points to several of Defendants' activities in an attempt to establish the minimum contacts required for personal jurisdiction. As discussed below, the Court finds these activities insufficient to confer such jurisdiction.

### I. Effects Test

Plaintiff argues that the *Calder v. Jones* "effects test," as interpreted by the Seventh Circuit, confers personal jurisdiction over Defendant in this case. *Janmark,* 132 F.3d at 1202 (citing *Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). In *Calder,* a writer and editor in Florida made allegedly defamatory statements about the plaintiff, a California resident. The Supreme Court held that California courts had jurisdiction over the defamation suit because the defendants' "intentional conduct in Florida [was] calculated to cause injury to respondent in

5

California." *Calder*, 465 U.S. at 791. The Seventh Circuit subsequently noted that "[t]here can be no serious doubt after *Calder v. Jones* that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark*, 132 F.3d at 1202. Applying this rationale, the Seventh Circuit in *Janmark* held that because the tort (interference with prospective economic advantage) was not complete until the plaintiff's customer cancelled the order in question, the injury and the tort therefore occurred in Illinois, where Plaintiff did business. *Id.* Under the *Calder* test, then, the state where the tort injury occurs may exercise jurisdiction over the out-of-state defendant. This holding is significant because it would allow jurisdiction over a defendant who caused injury in Illinois without any other contacts with the state.

Notably, the Seventh Circuit had addressed the issue of the *Calder* "effects test" in a trademark infringement case three years before its holding in *Janmark*. *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994). In that case, the court declined to rely on the "austere" basis for personal jurisdiction presented by *Calder*. *Id.* at 412. Rather, the Seventh Circuit noted that "[i]n *Calder* as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes *Calder* itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state." *Id.* In *Indianapolis Colts*, therefore, the Seventh Circuit explicitly refrained from holding that injury to intellectual property in Indiana was enough — in itself — to confer jurisdiction over an out-of-state defendant. Instead, the court pointed to the defendant's additional contacts with Indiana in finding jurisdiction.

Plaintiff points out that several courts have applied the effects test after the Seventh Circuit decided *Janmark*. *See Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 920

6

(C.D. Ill. 2000) (agreeing with previous uncited ruling on "effects test" with no real discussion of application of *Janmark*); *U.S. Tsubaki, Inc. v. Indus. Research Team*, No 00 C 4447, 2001 WL 99696, at *1-2 (N.D. Ill. Feb. 1, 2001) (finding personal jurisdiction over defendant based on the distribution of an allegedly misleading report within Illinois); *Ridell, Inc. v. Monica*, No, 03 C 3309, 2003 WL 21799935 at *3 (N.D. Ill. July 25, 2003) (holding in trade secret case that *Janmark* allows jurisdiction over tortfeasors who cause injury in Illinois, but noting that this particular defendant also directed activities into the forum state by mailing an advertisement to the Chicago Bears); *Clearclad Coatings, Inc. v. Xontal Ltd.*, No. 98 C 7199, 1999 WL 652030, at *7 (N.D. Ill. Aug. 20, 1999) (explicitly stating in non-trademark context that additional contacts with the forum state are not necessary when a plaintiff is injured by a business tort in Illinois, but also pointing out that the defendant's business trips were likely to "meet the low threshold for showing of entry into the forum state").

Of the cases cited by Plaintiff in favor of applying *Janmark's* ruling to this case, only *Bunn-O-Matic* involves trademark infringement. *Bunn-O-Matic*, 88 F. Supp. 2d at 920. In that case, however, the court addressed the renewal of a prior motion to dismiss heard before a different judge. *Id.* at 919. Accordingly, the court indicated that it would follow the previous opinion — not cited by Plaintiffs here — "unless new information convinces the Court that an error has occurred, other than the application of the law to the facts." *Id.* at 920. Because of this procedural posture, this Court does not find the *Bunn-O-Matic* opinion to be persuasive on the issue of applying the *Janmark* case to the realm of trademark law. *Bunn-O-Matic* further has no precedential effect in this Court.

Defendants, on the other hand, cite Judge Holderman's opinion in *Berthold Types Ltd. v. Eur. Mikrograf Corp.*, 102 F. Supp. 2d 928, 931-32 (N.D. Ill. 2000). In that case, the plaintiff, an Illinois

7

owner of trademarked fonts, sued several foreign defendants. Finding that the defendants' alleged infringement was insufficient to support the exercise of personal jurisdiction in Illinois, the court addressed the *Janmark* ruling in the trademark context. *Id.* Distinguishing the *Janmark* case as a different type of tort, the court noted that

> intellectual property infringement takes place in the state of the infringing sales, rather than the state of the trademark owner's domicile for the purposes of tort provisions of the Illinois long-arm statute. Thus, Illinois does not acquire jurisdiction merely by the fact that plaintiff felt harm here. In order to establish jurisdiction over defendants, plaintiff must show more.

*Id.* At 932.

This Court agrees that the *Janmark* ruling does not confer personal jurisdiction over alleged trademark infringers simply by virtue of the trademark owner's residence. This Court also agrees that Plaintiff must show additional contacts with the forum state to support assertion of personal jurisdiction over Defendants.

## II. Defendants' Website Activities at www.rangeking.com

Plaintiff next argues that Defendant has engaged in additional contacts with the forum state that confer jurisdiction on the Court. Plaintiff asserts that Defendants have availed themselves of Illinois law by engaging in various activities in and affecting the state of Illinois. Carney and Virtex, for example, have caused the SOFTEE mark to appear on the website located at www.rangeking.com.

While the Seventh Circuit has not addressed the question of what Internet activity is sufficient to trigger personal jurisdiction, courts in the this Circuit have adopted a "sliding scale" approach that places Internet activity into three categories: "(1) those in which the defendant clearly

8

transacts business in foreign jurisdictions over the Internet; (2) those in which a defendant has posted information on the Internet, but has no further communication with potential customers via the Internet; and (3) those in which the defendant operates an interactive web site that allows defendant and potential customers in foreign jurisdictions to communicate regarding defendant's goods or services." *Berthold*, 102 F. Supp. 2d at 932 (citations omitted). The first two categories represent opposite ends of the jurisdictional spectrum. Courts may exercise personal jurisdiction over website operators in the first category, but not in the second. *Id.* at 932-33. The third category represents the middle ground (and should perhaps be reordered as the second category if the "sliding scale" terminology is to survive). Given some level of interaction on a website, a court may exercise personal jurisdiction by considering "the level of interactivity and the commercial nature of the exchange of information." *Id.*

In this case, although Plaintiff's complaint asserts that Defendants' website allowed for "interactive participation with visitors," Plaintiff makes no allegations about the level of interactivity or the commercial nature of the interaction. Merely offering an email contact link is not sufficient to confer personal jurisdiction on the basis of a website. *See Trost v. Bauer*, No. 01 C 2038, 2001 WL 845477, at *11 (N.D. Ill. July 24, 2001). Defendants' use of the rangeking.com website, regardless of the appearance of the SOFTEE mark, does not provide personal jurisdiction in this forum.

### III. Defendants' Cease and Desist Letter

Plaintiff also argues that Defendants availed themselves of Illinois law when they sent a cease and desist letter into Illinois. The Court disagrees. Merely sending an infringement letter into a state does not confer personal jurisdiction over the sender by the courts of that state. *See Id.* Thus,

Defendants' letter to Plaintiff demanding that Plaintiff stop using the SOFTEE mark does not confer personal jurisdiction over Defendants in this forum. Similarly, Defendant's contact with Plaintiff in ordering two golf practice mats is deficient as well. Plaintiff contends that this contact was part of Defendants' scheme to infringe Plaintiff's trademark rights. Even if viewed merely as preparation to send a cease and desist letter, Defendants' ordering Plaintiff's product cannot support a finding of personal jurisdiction in this case. If sending such a letter does not confer jurisdiction, then neither does preparing to send such a letter by simply obtaining two of Plaintiff's products.

## IV. Advertising in Illinois

Although Plaintiffs contend that Defendants "advertise" their golf mats with the SOFTEE name in Illinois through the *Golf Range Times*, the combined effect of James Turner's two affidavits leads this Court to reject Plaintiff's assertion. As part of its response to Defendants' motion to dismiss, Plaintiff offered a very selective affidavit from Mr. Turner, the President of Forecast Golf Group, Inc. Turner's company publishes the *Golf Range Times* six times a year to nationwide distribution. Turner's first affidavit contains no mention of Defendants or their products. In his second affidavit, submitted by Defendants in their reply, Turner describes the "equipment review" section of his company's publication. Defendants' golf mats have appeared in Turner's publication not as a paid advertisement, but as an unsolicited product review — along with Plaintiff's product. Defendants did not solicit the mention of their golf mat in the *Golf Range Times*.

Plaintiffs argument that Defendants' advertisement for their website, www.rangeking.com, in the *Golf Range Times* constitutes sufficient minimum contacts with Illinois fails because Defendants' advertisement is not related to the accused infringement and contains nothing that is specifically directed toward Illinois. *See Trost*, 2001 WL 845477, at *9 (finding insufficient contacts

with Illinois even though the defendant distributed flyers and postcards and sold more than $25,000 in merchandise in Illinois). This Court does not consider the *Golf Range Times* publication to be activity on the part of Defendants that contributes toward minimum contacts with Illinois.

## V. Cybersquatting

Plaintiff points to *McMaster-Carr Supply Co. v. Supply Depot, Inc.*, for the proposition that this court has personal jurisdiction over Carney by virtue of his registration of the three SOFTEE-related domain names. No. 98 C 1903, 1999 WL 417352 (N.D. Ill. June 16, 1999). That case is a simple cybersquatting case, and is therefore distinguishable. The defendant in *McMaster* does not claim to have any valid right to the underlying trademark rights, but registered the domain name in order to harm the Plaintiff trademark owner. *Id.* at *5 n.4 ("[n]otably, Defendant has acknowledged that its purpose in registering the domain name is essentially to siphon off potential customers . . . ."). The court based its ruling on the defendant's intentions. *Id.* at *4-5. Even viewed in the light most favorable to the Plaintiff, Defendants have a greater claim to the underlying trademark than the defendant in the *McMaster* case. Carney's registration of domain names does not confer jurisdiction on the Court.

## CONCLUSION

The Defendants actions, taken individually or collectively, do not create the minimum contacts necessary for the Court to assert personal jurisdiction over them. It is unnecessary to address Defendants' objections to venue. Defendants' motion to dismiss is granted.

Dated: December 17, 2003                    Entered:

_____
Amy J. St. Eve
United States District Judge